Number 191101, United States v. Harold Altvater Thank you If it please the Court, Robert Shackenthal for Dr. Altvater and Chief Judge Howard may have one minute for rebuttal. Yes Thank you I know you didn't ask me this question, but you might have asked me why, Mr. Shackenthal, did you marry your present wife? And my answer would be, well, I was in love with her. That's not necessarily a rational decision, but there are many things that are wonderful about her. I would imagine she thought it was a rational decision. She has that strong independence nurtured at Smith College. Her stated philosophy is that if a man can do it, how hard can it be? She is, in my eyes, beautiful, strong-willed, capable of all kinds of mysteries to me. It's like being on a roller coaster. And she comes from a wealthy family, and the reason that's important to me is because I've never been a good earner, and it takes the pressure off. Now, if Dr. Altvater had been asked that question, why did you marry Maureen Curran, at his SEC deposition, what the jury would have heard is the question, why did you marry Maureen Curran, and the answer, because she's from a wealthy family. Rule 106 is foundational. It's in the 100s category. It's at the very beginning of our rules of evidence, and it is a basic concept of fairness. And this circuit has said, and I think every circuit has said, that it doesn't matter if what is taken out would not be admissible by itself. What matters is whether or not what's taken out distorts what was presented to the jury. And in this case, much that was taken out was distorted, distorts the meaning of what was left in, to my benefit. The distortion is to my benefit, but not the government's. For instance, the jury learned from listening to the statement that my client spoke to his wife on a regular basis about work, and the government argued that in its closing argument, that he had access to this. One of the problems for the government in this case is although Maureen Curran was a cooperating witness with the government, her basic story was that she didn't remember giving any material information to the defendant. She just had no memory of any specific incident where she did it. So the fact that they talked about work on a regular basis was obviously important to the government. What they took out from his statement was his claim that the nature of our conversations were about staffing and workplace environment, never about materiality. That's my little ad. The government argued that he admitted, and he did, that she was in possession of material, non-public information. Could you just do that first example, because I think it's reflective of the theoretical position you're taking about the completeness. The government's contesting it, and I'm having a little trouble figuring out what the right way to think about it is. So the first example is, we talked about work, to make it simple, but only about staffing. You say they can't put in just, we talked about work, they also have to put in, but only about staffing. The government's view, the second half of that, doesn't detract from the fact that there is an admission that they talked about work. And that's a relevant fact, because if there was no evidence that they ever talked about work, the government's case would be much harder. So what's the best authority you have for saying that even though it's an admission of a fact that is not undermined by the second statement, that nonetheless the rule of completion requires it to be included? Well, it is qualified by the second statement in a significant manner, I would suggest. Because, for instance, on this record, the government argued to the jury that he... What I'm asking is, is there authority that helps me? The government relies on a case which I think you are fair to say is distinguishable, in which it's, I'm near the truck, I don't have the gun. The gun in no way qualifies whether I was near the truck. You're saying this is different because I'm talking about, we did talk about work, but then I'm adding what we talked about as to work, and you can't, you're saying disaggregate the first statement from the second. So what I'm asking is, is there a precedent that's like that, that I could rely on to figure this out? Not that I, if it's not in my brief, I didn't find it. But, with that example, the government then argues to the jury, they talked about work, which I think is a distortion of what he actually said. A significant distortion, but not on the record that was in front of the jury. It allows the inference that that talk about work was about material matters. See, the thing is, even if you added in the other material, the inference would still be permissible because they don't have to believe the second half of it. Right, but they had to hear it. They had to hear it in context. Nothing that I suggest they had to hear in context was required to be believed by the jury. I'm near the truck, but I didn't see the gun. If I just say, I'm near the truck, that makes you think, oh, he would have seen the gun. But then if he says, no, I didn't see the gun, well, now I know that I could disbelieve it, that I'm allowed to infer, still, he was near the truck. How is that different from, we talked about work, but only about staffing? Well, in the truck example, doesn't he say something like, I didn't know the gun was there? But you could infer that he did if all you knew is he was near the truck and there was a gun in the truck. Right, but that... But they don't require you to put in the second part that makes clear the context in which he was saying he was near the truck, which is, I was near the truck without knowing the gun was there. That sounds to me similar to, I talked about work with her, but only about staffing. What if he said, I was near the truck, but I'm legally blind? Do you think he could leave out the legally blind part? Well, it would be good if he said, we talked about work, but I was deaf. Right. That's not his example. Well, he was deaf to anything material because it was never mentioned. And to go to another point, he actually says, they say to him, and this comes in front of the jury, was there a material matter that you were aware of? And he says yes. And then they ask him, what does material mean to him? And he gives a definition that is very different than the concept of materiality that matters in this case. And so how do you divorce that from his statement that he knew she had material information? And on a couple of occasions they say to him, and this is in front of the jury, why did you trade on a certain date? How can you edit out any part of that answer? How can you ask a why question, like my marriage issue, and edit out any part of that answer? No matter how rambling it is, no matter how much you think it doesn't ring true, how can you edit out the why question? And there are a whole series of these which are detailed in my brief. And so I think the real test is, do you get a false impression of what he was saying when you take out this material? And I think the answer here is yes. And obviously a defendant's statement is highly significant to a jury and was argued. On the marriage topic, I want to address this issue of Maureen Curran being allowed to opine about how her trust was broken, because this theory is misappropriation of information from someone that's in a trusting relationship with you. And the government says that I didn't object, but I think it's clear that I did object. And I had to swallow this answer. If I had known I was going to get this at trial, even though it's unconstitutional, I would have not allowed a woman on the jury. Maureen Curran, I was upset. I was very angry. Question why? Objection? Overrule? You can answer. I was upset because this was, I mean, nothing is an isolated incident. We have been married for many years, and the relationship had a pattern to it. To me, this wasn't very clearly demonstrated to me that my, I wasn't important. This was my profession. This was my career. I put a lot into it, and it's important. You know, to jeopardize me that way struck me as move to strike overruled. You know, as a trial lawyer, I listened to that, and my associate said to me, we just lost. Counsel, don't you think you would have lost anyway? No, I never think that. Okay, because the evidence was really quite strong that he, if one assumes that he traded on material information from whatever statements she made to him, and they may not have been directly disclosing material information, but enough other information or one had been called down to the FDA for an emergency meeting, and not hard to figure out that maybe the drug and the stock are in trouble from that. Don't you think that what she testified to was, apart from the pattern, that the abuse of the relationship was pretty self-evident to the jury? No, I don't. Okay. I think she opined basically that he was guilty, that he had been like this for a lifetime of marriage, and that she didn't count. And I don't think that's a fair characterization of their relationship, and I certainly don't think that was something for the jury to hear. Nor do I think this case was overwhelming, Your Honor. I have had many overwhelming cases where it is trial psychosis that you think you're going to have any chance of winning. Okay, fine, but answer my question. In light of all of this other evidence, wouldn't the jury have reached that conclusion even if she had never testified to this pattern? Let me help. If she had just said, yes, I think he abused my trust, would you be making the argument you're now making, or is it the pattern, he didn't value me over a period of time? It's the pattern that's the most damaging, but I'd still be making the argument because I think her subjective view of whether he violated her trust or not is not at issue. Did you make the narrower argument when you objected that the problem wasn't so much that she was testifying to the abuse of trust, but the additional information she was giving about the nature of the relationship? No, because I didn't. So the only argument that we're reviewing is just the question of whether she could testify to abuse of trust at all. That's the only argument you made to the district court, is that right? Right. I said that her subjective point of view was not relevant, and the government said it was. So what does that do to our review of this issue when the actual statement, I understand why you think that, when the actual statement had this additional content to it, which you think was prejudicial, if you weren't objecting to that particular content and you were only framing the objection as she shouldn't be able to talk about abuse of trust at all? So that was before she volunteered this. You moved to strike. I did move to strike. And what argument did you make then? The second I said move to strike, the judge said overrule. Okay. All right. So I do want to raise the last issue just very briefly, which is it has to be material, nonpublic information. I had a document that was very public and talked about the fact that the FDA was working with the company to try and get the drug back on the market. There were lots of patients who were demanding that the drug come back. All kinds of things of that nature were detailed in my brief. And the government's position at trial was if he hadn't read that article, if I couldn't prove he read that article, the fact that it was on the public record was irrelevant. And I say that that's just wrong. Thank you. Judge Howard, may it please the Court, Mark Quindlen on behalf of the United States. If I just take the issues in reverse order on that last issue very briefly, that's not how the issue was presented in the district court. The defendant sought to admit a series of articles on the ground that he had shown, that the defendant had shown them to his wife in advance of a meeting with the lawyer under the theory that it was relevant to his state of mind of why he engaged in the trades that he did. And what the district court did is it allowed the admission of the articles that the defendant's former wife recalled that the defendant had shown him and did not allow those that she did not recall. The article at issue here is one that she did not recall the defendant having shown to him. The government acknowledged that these articles were in the public realm and in the public domain when this issue came up. It was never argued below that the theory or the ground on which it was that these were being sought to be admitted was that it would rebut the element that this was material, non-public information. It was respectfully it was on the ground that it was relevant to the defendant's state of mind as to why he made the trades that he did. On the marriage issue, we did not argue that this issue was not preserved. The defendant did object and did move to strike the testimony when the pattern comment was made. But on the threshold question, marriage itself is not sufficient to establish. That may be, but it seems to me the government maybe went a bit further than it needed to on this issue of marriage itself is not enough to establish a relationship of trust. By asking essentially, did you think you, wife, in many ways a victim here, that your trust had been abused? Why isn't the appropriate question to her, did you have a relationship of trust with your husband about what you told him about your workplace activities? Well, I did two answers to this one. One is that that question along those lines was asked of Ms. Curran earlier in her journey. Then why the necessity of a later question? Well, it was to follow up and to confirm that. And I would point out that when... How is it confirming? It's asking her opinion as to whether that relationship had been abused by her former husband. Yes, because, well, I think... You know, that's the question for the jury. I understood, Judge Lynch. But it was, and I would point out that in the district court's instructions, the court did instruct the jury that it had to find, because this was a misappropriation theory, that there was a duty of trust and confidence. And that it could consider the fact that the defendant and Ms. Curran were married in making that determination. It didn't make any curative instruction to suggest that it can't consider anything that she said about whether it was abused in that way, though, right? In other words, the prejudicial content that he's objecting to comes from the later question. Yes. And the answer to it, and if I understand it, you're not really making an argument to us that it was necessary to ask the later question. No, I am saying that it was... The question was probative to the extent that her answer went beyond what the government was seeking to elicit. Why was the question probative? Let's put aside the issue of her answer going beyond. Judge Lynch, I think the intent of the question was to get testimony that they did have a duty of trust and confidence. But they already asked that, and it had been answered that they did. It had been asked once before, and... What was the precise question put the second time around? The second time around, it was... If I could just take a moment. Can you tell the jury what your reaction was when you learned that your husband had traded in Ariat stock in the time period of October 9th and before October 9th, right? Yes. You can take my word for it. Yes. And then the follow-up, did you have any feelings about whether or not this was relevant to any kind of trust you had in your husband? So your theory would be that... It was fleshing out the nature of the trusting relationship. That's right. That would encompass. That's right. And to the extent that the answer about the pattern of the relationship went beyond what the government was seeking to elicit, I think that really does go to what this court has often said is the district court's on-the-spot judgment about the relative weighing of the probative versus prejudicial effect would not be overturned absent extraordinary circumstances. We don't think that that's this case. But at the end of the day... Why not, given how damaging the additional testimony was? And given how irrelevant that aspect of the testimony was to the precise question on your own account the government was actually asking? Well, Judge Barron, because first I think implicit in her answer was the idea that, yes, this was breaching a duty of trust and confidence that I expected my husband to share with me. But you're not valuing you. How is that appropriate? I think in retrospect perhaps that question could have been phrased differently. No, I'm not asking about the question. I'm asking about the part of the answer, which is the part that he's identifying as the most prejudicial. I'm not seeing you identifying anything about it that's probative, that aspect of it. Usually when there's something very prejudicial, at least it has some probative content. But a statement that he didn't value me, what is probative about that with respect to any question that's relevant to this case? Again, I go back, Judge Barron, to the idea that I think implicit in that answer is the idea, why does she think he isn't valuing her? It's because she had told him there are certain things that you have to keep in confidence. He was acting in his own interest rather than acting in accord with what she had said. I would have thought the better answer was you couldn't predict what came out of her mouth at that point. Then why not grant the motion to strike? In other words, if I understand the challenge, and you say it's preserved, it's not necessarily to the question or even to all of the answer. But he moved to strike that part of it rather than giving a chance to explain why. There's just an overrule. So then we have to decide on the record, well, shouldn't have that part been stricken? And I guess I'm still not hearing from you what's probative about the part that says there's a pattern of him not valuing me, which is not probative of the question of whether this particular action bears on the nature of the trusting relationship. That's a claim about how she was treated in the marriage for reasons independent of that, of the relationship. I agree, Judge Barron, that it goes beyond, but I'd go back. Implicit in that answer is the idea that there was a breach of trust and confidence. And I'd point out that at the end of the day— I would have thought your two better arguments were it's an abuse of discretion standard of review. It was a quick call made by a trial judge. And in the end, one can hardly say it influenced the verdict. That's right, Judge Schlichten. That's exactly where I was going to go because— Glad to hear it. —at the end of the day, this court doesn't need to resolve that. The jury heard ample evidence, of course, that the defendant traded an area of stock, notwithstanding his wife's express instructions that he not do so. But more importantly, the district court expressly instructed the jury that it was not to base its judgment on any personal likes or dislikes, prejudices or sympathy. And this court has long said that it presumes that a jury follows the instructions of the district court. So it is highly probable that any possible error, and again, based on an on-the-spot judgment, as I alluded to earlier, did not affect the judgment. Briefly on the first question, I believe that the defendant's argument has been recast because below it was not an argument that a particular answer should be added to the redacted transcript under the doctrine of completeness. This was an across-the-board claim that, in the defendant's words, the main thrust of the deposition was his own explanations for why he traded an area of stock, and therefore the entirety of the deposition should come in. There's no support in the case law for that argument, and for good reason. It would be the proverbial exception that would swallow the rule. And a perfect illustration is that district court case Baso-Santiago, because in that case, no doubt the defendant could have argued that the most significant statement that he made to law enforcement was his denial that he knew that the gun was in the car, and that the two statements that were admitted about that he was outside when he interacted with the police and that the doors were locked were innocuous by comparison. But the district court properly looked at whether or not the third statement was necessary to correct any misstatement or distortion created by the first two statements. Could you just help me with two points? Because the fact scenario in that circumstance seems at least to me distinguishable in two respects from some of the statements. It doesn't mean it's therefore the completeness rule applies. I'm just trying to think, since there does seem to me that distinction, how should we think about it? With respect to a what question, and that was a what question in that case, the difference here seems to me is that there's no relationship necessarily between being near a car and what's in the car. There is a relationship between saying I talked about a topic and the content of what we talked about. So that makes it arguably more subject to a rule of completion than the example that you're relying on. And then the second way in which it seems distinguishable is with respect to a why question. The nature of a why question is all of the reasons. So if I take out only one of the reasons, I can give the misapprehension that that was the reason. So that example you're relying on in the gun case doesn't really directly address either of those two points of distinction. So could you just address why, given them, we still should think the rule of completion doesn't apply either to the why statements. And I understand maybe the answer is we don't have to get to any of that, but the nature of objection was. So even still, assuming I didn't agree with that global contention, do you have an argument on this more narrow gauge point about the points of distinction? Yes. So again, we do have the challenge that this is an across-the-board claim. But I think the cases that I've looked at, I think the Second Circuit's decision in the Williams case, which we cited, was possibly the most relevant because where the court basically said that it's not uncommon for a defendant to initially deny involvement in a crime and then later admitted involvement in a crime. And the fact that the earlier denial was made in the course of the same statement doesn't make it admissible under the rule of completeness. And so I think that that's a more comparable, that's not the same situation as in Basel Santiago where you're talking about potentially three discrete events. You're talking about a disavowal and then admission made in the course of the same statement. That's sort of saying X and not X. This is different. This is saying X, but let me explain to you what I meant by X. And that just seems a different thing where the risk of distortion does seem higher to me. When you say, we talked about this topic, specifically X. And then to just say, well, we talked about the topic, as if you don't have to say what he really was saying. It's not really like I said I did it, then I later said I didn't do it. You don't have to put in the first. Yeah, and I understand Judge Barron, and I guess part of the difficulty, and I'm not trying to fall back on our threshold argument, but part of the difficulty here is that we don't really have specific examples identified as, nor were specific examples identified to the district court, but this has to come in under the rule of completion. It wasn't across the board a claim that, in the defendant's words, the main thrust was his explanations for why he took the actions that he did, and therefore it would cause a distortion to allow any of his statements in absent the entirety of the transcript. If we did have specific identified statements that were excluded, and an argument about why it was relevant or necessary to explain statements that were admitted, I'd be in a much better position to argue why that was the case. But that's not the way the argument was either presented below. Why did the government object to the full transcript going in? What was your interest in stopping the full transcript from going in? I think the government wanted specific statements that the defendant made as... That's not an answer. I'm not sure it was put on the record other than it was a back and forth about what hearsay statements, and the government explained that to the extent the government was putting the statements in, these were admissions of a party opponent, and the defendant's statements otherwise would be hearsay unless necessary to come in under the rule of completeness, and then the government argued why the rule did not require the admission of the entirety of the transcript. Was there some danger of distracting the jury from the key issues in the case? But I don't guess that was argued. It wasn't. There are no hearsay. Right. I would just be speculating, Your Honor. Could you just address the last of the distinctions, which was how to deal with a why question, and whether the rule of completeness is such that when a why question is asked to understand why someone did something, it ever is proper to select out one of a number of the reasons that are given as the reason that is presented to the jury? I'm not sure I've seen that articulated in that way in the case law. I think that it certainly makes sense that if a defendant said, I did this for one, two, three reasons, and only two come in, I could certainly see why all three should come in under the rule of completeness. Again, it's hard to respond to any specific argument as to the transcript in this case because that's not how it was presented either below or with respect on appeal. Thank you. So in terms of that last issue, I think what I said to the trial judge in the motion to eliminate hearing goes exactly to the why questions. That's what I was talking about, that they were distorting the why questions that they asked him, not letting him get the full answer. Well, but if your objection was the whole transcript needs to go in and not just selective assertions of his answer as to why. So what I argued, I believe, Your Honor, and the record is the best source for this, not my memory, which at my age is not perfect anymore. It's true for all of us. Is that I was taking the position that the redactions that they proposed, because there were proposed redactions at that point, distorted the thrust of his position, including his explanations of his own idiosyncratic reasons for doing A, B, and C, which was exactly the why questions. And just on the last thing that my brother said about I didn't really object that these documents were on the public record. I said that the only reason that they should come in was because my client had showed them to his wife. So at transcript five and 125 and transcript four at 26 and 27, I think it's pretty clear that I did take the position that these documents were on the public record. And it was the government that took the position that I didn't have any proof that the defendant ever looked at them, and therefore they shouldn't come in. Not that I was not taking the position they're on the public record. The jury has a right to know that this information was generally available to the public. Did you make the argument, the relevant point isn't whether you made the argument they were on the public record. It's for what purpose were you making that argument? So that says in the context of the call with the district court, what you were arguing was it's relevant that you were saying that they were on the public record in the context of trying to show that he had relied on them in showing them to his wife. Is that right or wrong? So my position, I believe it's a fair reading of the record, that my position evolved over the course of the trial. And that by the time I actually offered them, my position was they're on the public record. So you can't say that this is material non- Where would I find that information, that evolution? I believe on the pages that I just cited that are in my brief when I say what the government's position was, I believe that the record speaks for itself obviously, but I remember going through this concept in my head that no, I have a better grounds for this, that they're actually on the public record whether he read them or not. They show that this stuff is not private. And so it was my theory by the end that if you traded on insider information in your own brain, but in fact all that information was on the public record, he hadn't committed a crime. Thank you both. We'll take a five-minute recess. All rise. Thank you.